UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

U.S. SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

   v.

JAMES M. NICHOLSON and
WESTGATE CAPITAL MANAGEMENT, LLC,

        Defendants,

   and

WESTGATE ABSOLUTE RETURN FUND, LP,
WESTGATE ALPHA FUND, LP,
WESTGATE EQUITY FUND, LP,
WESTGATE FOCUS FUND, LP,
WESTGATE GROWTH FUND, LP
WESTGATE OPPORTUNITY FUND, LP,
WESTGATE OPPORTUNITY MASTER FUND, LTD.,
WESTGATE PREMIER GROWTH FUND, LP,
WESTGATE SELECT FUND, LP,
WESTGATE STRATEGIC GROWTH FUND, LP, and
WESTGATE SUMMIT FUND, LP,

        Relief Defendants.

Case No.

'09 CIV 1748

---

# COMPLAINT

Plaintiff the United States Securities and Exchange ("Commission") alleges as follows:

## SUMMARY

1.  The Commission files this emergency action to halt an ongoing fraud by James M. Nicholson ("Nicholson") and Westgate Capital Management, LLC ("Westgate"), an unregistered investment management company controlled by Nicholson. The fraud concerns eleven hedge funds controlled by Nicholson and Westgate: Westgate Absolute Return Fund, LP; Westgate Alpha Fund, LP; Westgate Equity Fund, LP; Westgate Focus Fund, LP; Westgate Growth Fund, LP; Westgate Opportunity Fund, LP; Westgate Opportunity Master Fund, Ltd.; Westgate Premier Growth Fund, LP; Westgate Select Fund, LP; Westgate Strategic Growth Fund, LP; and Westgate Summit Fund, LP ("Hedge Funds" or "Relief Defendants"). Nicholson and Westgate ("Defendants") are engaged in a scheme that has defrauded hundreds of investors of millions of dollars.

2.  From at least January 2008 through the present, a period in which the value of a number of the Hedge Funds declined precipitously, the Defendants: 1) provided prospective investors with materially false and misleading sales materials claiming an improbable track record of consistent positive monthly returns; 2) made materially false and misleading oral statements to current and prospective investors concerning the financial health of the Hedge Funds under their management; and 3) concealed Westgate's true financial condition by creating a fictitious accounting firm that provided fake audited financials to investors. The Defendants engaged in this conduct at a time when many of the Hedge Funds had sustained losses of a magnitude that made it impossible to repay investors either their principal or their share of the purported gain. Furthermore, in order to perpetuate the fraudulent scheme the Defendants continued to solicit new investors and seek additional capital from existing investors.

3. By engaging in the conduct described in this Complaint, the Defendants violated, and unless enjoined, are reasonably likely to continue to violate, Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2), (4)], and Advisers Act Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8]; Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C §78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

4. To halt the ongoing fraud, maintain the status quo, and preserve investor assets, the Commission seeks various forms of equitable relief against the Defendants, including, but not limited to, a temporary restraining order and asset freeze, preliminary injunctions, permanent injunctions against future violations of the federal securities laws, disgorgement plus pre-judgment interest, and civil penalties.

5. Based on the ongoing nature of their violations and the scienter the Defendants have demonstrated through their willful and wanton disregard for the federal securities laws, the Defendants have shown they will continue to violate the law unless the Court grants the injunctive and other relief the Commission seeks.

## DEFENDANTS AND RELIEF DEFENDANTS

6. Defendant Nicholson, 42, is a resident of Saddle River, New Jersey, and the managing member of Westgate. Nicholson is a former registered representative who was permanently barred, in 2001, by the National Association of Securities Dealers (now the Financial Industry Regulatory Authority). At all relevant times, Nicholson provided investment advice, was responsible for the trading activities, and provided the account values included in investors' account statements for all, or virtually all, of the Hedge

Funds. Nicholson received compensation for management and investment advice from fees paid by the Hedge Funds.

7. Defendant Westgate is a Delaware Limited Liability Company, organized on August 16, 1999, with its principal place of business in Pearl River, New York. Nicholson is the managing member of Westgate. Westgate is not registered, in any capacity, with the Commission.

8. Relief Defendant Westgate Absolute Return Fund, LP is a Delaware limited partnership formed on February 22, 2006. This Hedge Fund is not registered with the Commission.

9. Relief Defendant Westgate Alpha Fund, LP is a Delaware limited partnership formed on August 22, 2001. This Hedge Fund is not registered with the Commission.

10. Relief Defendant Westgate Equity Fund, LP is a Delaware limited partnership formed on March 1, 2000. This Hedge Fund is not registered with the Commission.

11. Relief Defendant Westgate Focus Fund, LP is a Delaware limited partnership formed on March 20, 2003. This Hedge Fund is not registered with the Commission.

12. Relief Defendant Westgate Growth Fund, LP is a Delaware limited partnership formed on August 16, 1999. This Hedge Fund is not registered with the Commission.

- 5 -

13.   Relief Defendant Westgate Select Fund, LP is a Delaware limited partnership formed on December 15, 2004. This Hedge Fund is not registered with the Commission.

14.   Relief Defendant Westgate Opportunity Fund, LP is a Delaware limited partnership formed on September 7, 2000. This Hedge Fund is not registered with the Commission.

15.   Relief Defendant Westgate Opportunity Master Fund, Ltd. is a British Virgin Islands entity formed on December 20, 2006. This Hedge Fund is not registered with the Commission.

16.   Relief Defendant Westgate Premier Growth Fund, LP is a Delaware limited partnership formed on March 5, 2001. This Hedge Fund is not registered with the Commission.

17.   Relief Defendant Westgate Strategic Growth Fund, LP is a Delaware limited partnership formed on January 1, 2004. This Hedge Fund is not registered with the Commission.

18.   Relief Defendant Westgate Summit Fund, LP is a Delaware limited partnership formed on September 10, 2002. This Hedge Fund is not registered with the Commission.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14]; Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]; and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

20. This Court has personal jurisdiction over the Defendants and Relief Defendants and venue is proper in the Southern District of New York because the Defendants and Relief Defendants maintained a place of business, conducted business, and engaged in the conduct constituting the alleged fraud in the Southern District of New York.

21. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business set forth in this Complaint.

## FACTS

22. In 1999, Nicholson formed Westgate and founded the Westgate Growth Fund, LP ("Growth Fund"). Westgate is the general partner for all, or virtually all, of the Hedge Funds, all of which Nicholson established on various dates beginning in 1999. As the general partner, Westgate is responsible for investment decisions on behalf of the Hedge Funds and for the execution of the Hedge Funds' portfolio transactions.

23. Nicholson handles the day-to-day management of the Hedge Funds' investment portfolios on behalf of Westgate. He has exclusive trading authority over all, or virtually all, of the Hedge Funds.

24.     The Defendants offered and sold limited partnership interests in the Hedge Funds through multiple offerings.

### A.     The Defendants Falsely Claimed Consistently Positive Returns in Promotional Materials Provided to Prospective Investors

25.     The Defendants prepared, approved and disseminated to prospective investors false and misleading written marketing materials. Specifically, the Defendants falsely claimed that for a 99-month period stretching from October 1999 through December 2007, the Westgate Growth Fund -- a purported long/short domestic equity fund that seeks positive rates of return in all market conditions -- achieved positive returns in all but one month, or 98.92 percent of the time. They were able to effectively use these marketing materials to persuade potential investors to invest in the Hedge Funds given that during this same period of time, in comparison, the average long/short domestic equity fund achieved positive returns only 63 percent of the time on average. These sales materials also falsely reflected that during this period, the Growth Fund outperformed the S&P 500 by over 400 percent:

**Westgate Growth Fund LP**
**December 2007**
**Returns per Month and Annual Returns (Net of All Fees), Since Inception:**

|         | 2007   | 2006   | 2005   | 2004   | 2003   | 2002   | 2001   | 2000   | 1999   |
|---------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| Annual  | 16.44% | 31.92% | 12.89% | 10.88% | 12.34% | 13.50% | 13.15% | 35.61% | 56.07% |
| Monthly |        |        |        |        |        |        |        |        |        |
| Jan     | 1.76%  | 0.96%  | 1.12%  | 1.22%  | 0.84%  | 1.51%  | 1.84%  | 7.82%  |        |
| Feb     | 1.33%  | 0.89%  | 0.97%  | 1.31%  | 0.36%  | 1.47%  | 0.24%  | 3.31%  |        |
| Mar     | 1.23%  | 0.97%  | 0.97%  | 1.06%  | 0.82%  | 1.23%  | 0.26%  | 5.36%  |        |
| Apr     | 1.41%  | 7.83%  | 0.91%  | 1.08%  | 0.90%  | 1.42%  | 2.17%  | 3.02%  |        |
| May     | 1.07%  | 5.12%  | 1.15%  | 0.81%  | 1.21%  | 1.04%  | 1.10%  | 1.35%  |        |
| Jun     | 1.34%  | 4.60%  | 1.08%  | 0.81%  | 1.22%  | 0.13%  | 1.18%  | 3.71%  |        |
| Jul     | 1.15%  | 1.00%  | 0.98%  | 0.05%  | 1.22%  | 0.41%  | 0.86%  | 1.51%  |        |
| Aug     | 1.12%  | 1.30%  | 1.01%  | 0.80%  | 1.18%  | 0.97%  | 0.11%  | 1.85%  |        |
| Sept    | 1.43%  | 1.24%  | 1.05%  | 0.80%  | 0.90%  | 1.03%  | -0.64% | 1.62%  |        |
| Oct     | 1.30%  | 1.59%  | 0.97%  | 0.60%  | 1.29%  | 1.38%  | 1.85%  | 0.93%  | 18.91% |
| Nov     | 1.15%  | 1.44%  | 1.02%  | 1.04%  | 1.16%  | 1.22%  | 1.89%  | 0.26%  | 19.08% |
| Dec     | 1.03%  | 1.35%  | 0.96%  | 0.80%  | 0.60%  | 0.93%  | 1.60%  | 0.37%  | 10.22% |

26.     Similarly, the Defendants prepared, approved and disseminated to prospective investors written marketing materials for the Westgate Strategic Growth Fund ("Strategic Fund") -- a purported long/short fund that actively trades U.S. equities – that falsely claimed positive returns for 56 out of 56 months, or 100 percent of the time, between January 2004 and August 2008. As with the marketing materials for the Growth Fund, they were able to effectively use the Strategic Fund marketing materials to persuade potential investors to invest in the Hedge Funds given that, during this same period of time, in comparison, the average long/short domestic equity fund was only achieving positive returns 64 percent of the time on average. These sales materials also falsely reflected that during this period, the Strategic Fund outperformed the S&P 500 by nearly 300 percent:

**Westgate Strategic Growth Fund LP**
**August 2008**
**Returns per Month and Annual Returns (Net of All Fees):**

|           | 2008   | 2007   | 2006   | 2005   | 2004   |
|-----------|--------|--------|--------|--------|--------|
| Annual    | 10.04% | 20.07% | 21.33% | 18.17% | 21.82% |
| Monthly   |        |        |        |        |        |
| January   | 0.29%  | 1.55%  | 3.49%  | 1.61%  | 4.47%  |
| February  | 0.95%  | 1.36%  | 0.49%  | 1.58%  | 2.20%  |
| March     | 1.42%  | 1.93%  | 1.58%  | 0.99%  | 3.11%  |
| April     | 1.33%  | 1.71%  | 1.87%  | 1.56%  | 4.46%  |
| May       | 1.53%  | 1.49%  | 1.89%  | 1.54%  | 0.25%  |
| June      | 1.45%  | 1.68%  | 1.22%  | 0.90%  | 0.59%  |
| July      | 1.32%  | 1.33%  | 1.12%  | 1.21%  | 0.04%  |
| August    | 1.34%  | 1.63%  | 1.38%  | 1.12%  | 0.69%  |
| September |        | 1.42%  | 1.57%  | 1.72%  | 0.82%  |
| October   |        | 1.69%  | 1.75%  | 0.71%  | 0.79%  |
| November  |        | 1.41%  | 1.53%  | 0.67%  | 1.51%  |
| December  |        | 1.23%  | 1.63%  | 3.23%  | 1.10%  |

**B.    The Defendants Made Oral Misrepresentations and Omissions Concerning the Value of the Hedge Funds**

27.     For at least the last year, while the value of the assets in a number of the Hedge Funds declined precipitously, the Defendants failed to disclose this material fact to their investors. In fact, the Defendants affirmatively solicited new and current investors

with oral statements that described Westgate as having hundreds of millions of dollars under management. Specifically, in October 2008, a Westgate representative met with the representative of a potential investor and falsely told that individual that Westgate had $750 million in assets under management. On another occasion, in February 2009, Nicholson falsely told an investor that the Strategic Fund was in fine condition and had $200 million in assets. In reality, at this time, Westgate's financial condition was so perilous that numerous investors who had requested redemption checks received checks that were returned for insufficient funds.

### C. The Defendants' Misrepresentations and Omissions Induced Investors to Invest in the Hedge Funds

28.     For at least the last year, while the value of the assets in a number of the Hedge Funds declined precipitously, the Defendants made material misrepresentations and omissions regarding the value of assets under their management and the Hedge Funds' historical performance. These misrepresentations and omissions induced investors to invest in the Hedge Funds.

29.     Specifically, in June 2008, a Westgate representative solicited Investor A with an investment opportunity in the Strategic Fund. The representative told Investor A that the fund had never lost money and gave him a marketing brochure showing past returns on the Strategic Fund and the Growth Fund. The marketing materials for the Strategic Fund showed historical annual returns of approximately 20 percent for the years 2004 to 2007, with year-to-date returns of 4.68 percent for the first three months of 2008. The Growth Fund marketing materials showed annual returns since the fund's inception in October 1999, with returns as high as 32 percent in 2006 and year-to-date returns of

2.4 percent for the first three months of 2008. Based upon these representations, Investor A decided to invest approximately $250,000 in the Strategic Fund.

30. In October 2008, after the value of the assets under Westgate's management had declined precipitously, a Westgate representative contacted Investor B with a solicitation to invest in one of the Hedge Funds. The representative and Investor B became acquainted two months earlier at a golf outing sponsored by Westgate. During the outing, the representative described a Westgate fund that took long and short positions in equities and had an excellent track record of no monthly losses. Subsequently, the representative contacted Investor B with an opportunity to invest in a fund recently opened up to new investors. The two met in person and, based on the representative's statements regarding the historical performance and liquidity of the fund, Investor B decided to invest $750,000 in the Strategic Fund.

31. The representative did not disclose to Investor B Westgate's dire financial condition, which as a practical matter meant that anyone choosing to invest in one of the Hedge Funds, at that time, would be assuming astronomical risk.

32. According to monthly account statements provided to Investor B, the Strategic Fund had positive returns during the months of October, November and December 2008.

33. In December 2008, Nicholson solicited current investors with a "special" opportunity to earn an 8-10 percent guaranteed return for a one month investment available only to Westgate's "best clients." At least one existing investor, Investor A, took advantage of this purported offer by investing an additional $100,000 with Westgate.

34. In January 2009, Investor A made a request to Westgate to redeem the December investment. In January 2009, Investor A received a check for $108,921.14 that was returned for insufficient funds. A subsequent check for a slightly different amount also bounced. To date, Nicholson and Westgate have not satisfied Investor A's redemption request.

35. In February 2009, Investor B contacted the Westgate representative and asked to have his investment redeemed. Shortly thereafter, Investor B spoke with Nicholson who falsely told Investor B that the Strategic Fund was in fine financial condition with a current value of $200 million, but explained nevertheless that Westgate was exercising its right under the limited partnership agreement to "put up the gates" and temporarily suspend redemption requests due to market forces and "irrational" investor behavior. To date, the Defendants have not satisfied Investor B's redemption request.

D.  **The Defendants Took Steps to Conceal the Hedge Funds' <u>Deteriorating Financial Condition from Investors</u>**

36. During the past several months, the Defendants made materially false and misleading statements to Westgate investors in order to conceal the true nature of Hedge Funds' deteriorating financial condition.

37. Nicholson established a fake accounting firm, which he named Havener and Havener. Nicholson personally set up this front at 49 East 41st Street, New York, through a virtual office arrangement, using his own telephone numbers and driver's license. Nicholson also provided multiple Hedge Fund investors with fake audited financial statements from this fictitious accounting firm. Nicholson is not a trained

accountant, nor is there evidence that he or Havener and Havener have ever provided accounting services to the public.

38.  In September 2008, the Westgate Opportunity Fund ("Opportunity Fund") incurred $16 million in losses due to a substantial investment in Lehman Brothers Holdings Inc. prior to Lehman's bankruptcy. Nicholson closed the Opportunity Fund and unilaterally transferred its investors into the Strategic Fund.

39.  On several occasions between January 1, 2009 and February 13, 2009, despite numerous requests, Nicholson refused to show Westgate employees documentation sufficient to verify his claims regarding the value of the Hedge Funds' assets.

40.  In October 2008, Nicholson instructed two Westgate traders to stop making trades. This material fact was not disclosed to current or prospective investors

41.  In December 2008, when one of the Hedge Funds' largest investors visited Westgate's offices to obtain information as to the safety of his investment, Nicholson directed an employee to falsely tell the investor that the employee was responsible for reconciling two of the Hedge Funds in which the investor had invested and that the funds were in good financial condition. In fact, the employee was responsible for reconciling only the trades in the Absolute Returns Fund, not any other Hedge Fund. The employee refused Nicholson's request.

42.  In January and February of 2009, Westgate issued numerous redemption checks to investors and paychecks to employees that were returned for insufficient funds.

## COUNT I

### Violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act

43. The Commission repeats and realleges Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. The Defendants, knowingly and recklessly, through the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)]: (a) have employed, are employing, or are about to employ devices, schemes, and artifices to defraud any client or prospective client; or (b) have engaged, are engaging, or are about to engage in acts, practices, or courses of business which operates as a fraud or deceit upon any client or prospective client.

45. By engaging in the foregoing conduct, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2), (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT II

### Violation of Section 17(a) of the Securities Act

46. The Commission repeats and realleges Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. The Defendants knowingly, recklessly, or negligently, in the offer or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce or the mails, or a facility of a national securities exchange: (a) employed devices, schemes or artifices to defraud; (b) obtained money by means of untrue

statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (c) engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit on the purchasers of such statements.

By reason of the foregoing, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. §77q(a)(1).

## COUNT III

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5

48. The Commission repeats and realleges Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. The Defendants, knowingly and recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means and instrumentality of interstate commerce or of the mails or the facility of a national securities exchange: (a) employed devices, schemes or artifices to defraud; (b) obtained money by making untrue statements of material facts or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon any purchasers of such securities.

50. By engaging in the foregoing conduct, the Defendants have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to violate,

Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 [17 C.F.R. §240.10b-5].

## **RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests the Court:

**I**

Temporarily, preliminarily, and permanently enjoin the Defendants, their agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with them, and each of them, from violating Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder, Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

**II**

Order the freezing of the Defendants' and Relief Defendants' assets and direct that all financial or depository institutions comply with the Court's Order. Furthermore, order that the Defendants and Relief Defendants immediately repatriate any funds held at any bank or other financial institution not subject to the jurisdiction of the Court, and that they direct the deposit of such funds into the registry of the Court, pending conclusion of this matter.

**III**

Order that the Defendants and Relief Defendants shall file with the Court and serve upon Plaintiff and the Court, within 10 days of the issuance of this Order or 3 days prior to a hearing on the Commission's motion for a preliminary injunction, whichever comes first, an accounting, under oath, detailing all of their assets and all funds or other assets received from the Hedge Funds' investors and from one another.

### IV

Order that the Defendants be restrained and enjoined from destroying, removing, mutilating, altering, concealing, or disposing of, in any manner, any of their books and records of documents relating to the matters set forth in the Complaint, or the books and records and such documents of any entities under their control, until further order of the Court.

### V

Order that the parties may commence discovery immediately, and that notice periods be shortened to permit the parties to require production of documents and the taking of depositions, on 72-hours notice.

### VI

Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount.

### VII

Order the Defendants to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(c)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## VIII

Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____  _____
Robert B. Blackburn (RB 1545)   Jordan A. Thomas

Securities and Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281-1022
(212) 336-1050 [Blackburn]
(212) 336-3317 [Blackburn FAX]
BlackburnR@sec.gov

Cheryl J. Scarboro
John Reed Stark
Thomas A. Sporkin
David Smyth
Ellen F. Bortz
Christopher R. Mathews
Sarit Klein

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 200549-4030
(202) 551-4475 [Thomas]
(202) 772-9245 [Thomas FAX]
ThomasJA@sec.gov

Attorneys for Plaintiff

Dated: February 25, 2009